**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VITARROZ CORPORATION, | |
| *Plaintiff*, | |
| v. | Civil Action No. 05-5363 (KSH) |
| | |
| G. WILLI FOOD INTERNATIONAL LTD.; | |
| WILLI USA HOLDINGS, INC.; | **OPINION** |
| ZWI WILLIGER, | |
| *Defendants/Third-Party Plaintiffs*, | |
| v. | |
| | |
| STEVE WEINREB; | |
| ARTIE WEINREB, | |
| *Third-Party Defendants*. | |

**Katharine S. Hayden, U.S.D.J.**

Before the Court are two motions:  one to confirm an arbitration award (the "Award")

pursuant to § 9 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*., and another to

vacate the same Award pursuant to § 10 of the FAA.  For the reasons discussed below, the Court

will grant the former, deny the latter, confirm the arbitration award, and enter judgment

accordingly.

**I.      FACTUAL BACKGROUND & PROCEDURAL HISTORY**[1]

This breach of contract and trade libel action arose from a defunct merger agreement

between the parties.  Plaintiff Vitarroz Corporation ("Vitarroz") is a New Jersey distributor of

---

[1] The facts and procedural history are taken from the amended complaint [D.E. # 9] and the
Award (which appears as Exhibit B to the Declaration of Jamie P. Clare ("Clare Decl.")).

ethnic food products.  Am. Compl. ¶ 1.  Defendant Willi USA Holdings, Inc. ("WHI") is a Delaware corporation and is a wholly owned subsidiary of co-defendant G. Willi Food International, Ltd. ("GWFIL"), a publicly traded company that supplies kosher food products throughout the world.  Am. Compl. ¶ 2.  Zwi Williger is the Chairman and Chief Operating Officer of GWFIL, and is also an officer of WHI.  On June 20, 2005, the parties signed a Contribution Agreement (the "Agreement") for the purpose of forming a new corporate entity ("New Vitarroz"), under which Vitarroz would contribute substantially all of its assets and business, and defendants would contribute cash and ultimately own New Vitarroz (Vitarroz would have an opportunity to procure an ownership interest under the Agreement as well).  Am. Compl. ¶¶ 6-8.  The Agreement set the closing date for August 31, 2005.  Am. Compl. ¶ 9. Williger, in his representative capacity, signed the Agreement on behalf of WHI, which had been established for the "purpose of engaging in the transaction with Vitarroz."  Award at 9.  Neither GWFIL nor Williger (in his personal capacity) was a signatory.  Declaration of Peter J. Kurshan ("Kurshan Decl."), Exh. A at 39.

Section 7.08 of the Agreement set forth detailed confidentiality requirements that applied before and after the transaction's closing date; the parties also agreed that the confidentiality provisions would survive if the acquisition was not completed for any reason.  Am. Compl. ¶¶ 10-18; Kurshan Decl., Exh. A at 24-26.  Relevant here, the parties agreed to keep confidential certain information obtained in due diligence, including "the existence and terms of the [Agreement], as well as all information and records, whether written or oral, which were obtained, directly or indirectly, from the other party concerning the business of the other party." Am. Compl. ¶ 10; Def. Br. at 4.

The closing date passed without consummation.  Defendants requested an extension to complete their due diligence, but Vitarroz rejected the request, declaring that time was of the essence.  Am. Compl. ¶ 21.  Defendants eventually informed Vitarroz that they were no longer interested in closing the Agreement.  Am. Compl. ¶ 22.

Thereafter, on September 26, 2005, defendants' counsel delivered to Vitarroz's counsel a proposed press release announcing the termination of the Agreement, which read in pertinent part:  "As part of our due diligence process, we conducted a detailed review of the financial condition of Vitarroz.  It is unfortunate that as a result of issues that arose during the due diligence process [defendants] ha[ve] elected not to go forward with the acquisition of Vitarroz."  Am. Compl. ¶ 23.  Vitarroz immediately rejected the proposed language, and substituted its own proposed revisions.  Am. Compl. ¶ 25.  Defendants, in turn, rejected the counter-proposal and issued the unaltered press release the next morning, on September 27, 2005.  Am. Compl. ¶ 26. [2]

As a result of the press release, Vitarroz filed suit in New Jersey Superior Court on October 11, 2005, and defendants removed on diversity grounds to this Court on November 14, 2005 [D.E. # 1]. [3]  Vitarroz filed an amended complaint on January 6, 2006 [D.E. # 6], asserting causes of action for, *inter alia*, breach of contract, breach of the implied duty of good faith and fair dealing, tortious interference of contractual relations and prospective economic advantage,

_____

[2] Though the amended complaint does not specifically allege anything more than distribution of the press release to the general public and through several other media outlets, the Award states: "Vitarroz asserts that the issuance of [the press release] (and the publication of an internet article by *Globes Online* on September 29, 2005 in which Williger is quoted as having said, in relation to the failed Vitarroz acquisition, that '[t]here are too many pitfalls there') caused substantial harm to its business . . . ."  Award at 3.  Defendants do not dispute that Williger made these additional comments.

[3] Removal jurisdiction was proper under 28 U.S.C. §§ 1441(a), 1332(a).  Jurisdiction is now also proper under 9 U.S.C. § 9.

trade libel, and fraudulent inducement.[4]  Am. Compl. ¶ 34-86.  Specifically, Vitarroz claimed

that the press release made a pejorative reference to its financial condition, which caused

"substantial harm to its business by creating the erroneous impression in the minds of suppliers

and customers that [it] was unstable, was experiencing serious financial problems[,] and was

possibly insolvent, and could be on the verge of bankruptcy."  Award at 3.

Before defendants answered, the parties agreed to arbitrate this matter as required by §

15.04 of the Agreement, and the Court dismissed the action with prejudice in a stipulation and

order on May 31, 2006 [D.E. # 17].  The Court expressly retained jurisdiction "for purposes of

hearing: challenges to the arbitrators; challenges to the arbitrators' award; converting any

arbitration award to judgment; and enforcement of any arbitration award."  Stipulation & Order,

¶ 5.  Steve and Artie Weinreb—principals of Vitarroz—were not named as parties in the original

complaint.  Defendants evidently intended to assert third-party claims against the Weinrebs, but

did not do so in this Court as a result of the dismissal.  The Weinrebs consented, however, to this

Court's jurisdiction for purposes of entering into arbitration under the Agreement [D.E. # 17 ¶ 2].

Defendants did subsequently assert the third-party claims (styled as "counterclaims") against the

Weinrebs in the arbitration.  Award at 1-2.

Before conducting an evidentiary hearing, a three-arbitrator panel permitted the parties to

conduct "pre-hearing discovery . . . during which documents were exchanged, depositions were

conducted[,] and the identities of expert witnesses were disclosed."  Award at 6.  The panel then

---

[4] With respect to the fraudulent inducement claim, Vitarroz alleged that before defendants
informed it that they would not consummate the Agreement, they requested a substantial
reduction in a purchase order issued to Vitarroz after the parties signed the Agreement.  Vitarroz
alleges that it was fraudulently induced to agree to the reduction because defendants led it to
believe that they would close on the merger.  Am. Compl. ¶ 31-33.

held a five-day evidentiary hearing from April 29, 2008 to May 7, 2008, during which both

parties were represented by counsel. At the hearing, plaintiff adduced testimony from nine

individuals, and defendants adduced testimony from six; each witness gave testimony under

direct and cross-examination.[5]  *Id.*  The parties also submitted "multiple volumes of documentary

evidence."  *Id.*   Before the testimony of Steve Weinreb, the panel indicated to the parties for the

first time, over defendants' objection, that Weinreb's testimony would be limited to 30 minutes

each for direct and cross-examination because one of the arbitrators had to attend a wake.  Def.

Br. at 6.   Defendants further allege that Weinreb's direct testimony lasted 40 minutes and,

consequently, the panel limited cross-examination to 25 minutes.  *Id.*   After the proceeding

concluded, the parties submitted legal memoranda, and a week later made summation arguments

and answered the panel's questions via a telephonic hearing.  Award at 6-7.

In its written Award, the panel concluded that the press release breached the

confidentiality provisions in § 7.08 of the Agreement, and that defendants had breached their

contractual duty to cooperate and their implied obligation of good faith and fair dealing due to

the manner in which they issued the release  The panel reasoned as follows:

> [Defendants] argue that none of the statements comprising the . . .
> press release, either read alone or in conjunction with the other
> statements in the release, disclosed "Confidential Information" as
> defined in the . . . Agreement.  But it is clear from the evidentiary
> record that third parties who read the release, including certain of
> Vitarroz's suppliers, construed the release as stating that the due
> diligence process yielded adverse information concerning the
> financial condition of Vitarroz that was of sufficient magnitude to
> induce [defendants] to terminate the transaction.   The Panel
> concludes that such an interpretation was a reasonable one to draw
> from the language of the release stating that "issues that arose"
> following a "detailed review of the financial condition of Vitarroz"
> were responsible for [defendants'] decision "not to go forward
> with the acquisition of Vitarroz."  The Panel further concludes that,

---

[5] No transcript for the proceeding exists.

> given the exceedingly broad definition of "Confidential
> Information" as including "information obtained from" Vitarroz by
> [defendants], the adverse financial information that purportedly
> precipitated the termination of the transaction necessarily would
> have had to have been derived from "Confidential Information"
> discovered by [defendants] during the due diligence process.

Award at 7-8.  Additionally, the panel acknowledged that GWFIL and Williger had not signed

the Agreement, but nonetheless found that

> WHI breached the duty to cooperate set forth in Section 7.08 of the
> . . . Agreement, and further violated the covenant of good faith and
> fair dealing, when Williger decided on behalf of [GWFIL] to issue
> the . . . press release without affording Vitarroz an adequate
> opportunity to seek a protective order prohibiting the dissemination
> of such release, or alternatively, modifying the language of the
> release.
>
> The Panel further concludes that, under the circumstances of this
> case, [GWFIL] and Williger are jointly and severally liable for any
> damages sustained by Vitarroz as a result of the issuance of the . . .
> press release. . . .  [T]he panel finds that [GWFIL] and Williger
> formed WHI for the purpose of engaging in the transaction with
> Vitarroz; that [GWFIL] and Williger controlled the activities of
> WHI; and that the acts which triggered WHI's breach of the duty
> to cooperate and its violation of the covenant of good faith and fair
> dealing were undertaken by [GWFIL] and Williger.

*Id.* at 9-10.

After calculating Vitarroz's damages as a result of defendants' breach and rejecting

defendants' asserted counterclaims, the panel awarded Vitarroz $590,992.00.  *Id.* at 15.

Exercising its discretion, the panel declined to award pre-judgment interest, but stated that in the

event that defendants failed to pay the sum awarded within 30 days thereof, that that amount

would then bear interest at 10% per annum.  *Id.* at 15-16.

When defendants failed to pay the amount the panel had awarded, Vitarroz moved this

Court to confirm the Award pursuant to § 9 of the FAA and enter final judgment for it [D.E. #

18].  Defendants then cross-moved [D.E. # 22] to vacate the Award pursuant to § 10 of the FAA,

asserting that the panel had manifestly disregarded applicable law and was guilty of misconduct for unfairly limiting cross-examination of Steve Weinreb.

## II.      STANDARD OF REVIEW

Section 9 of the FAA requires a federal district court to confirm an arbitration award unless the award is "vacated, modified, or corrected as prescribed in sections 10 and 11 of [the statute].  9 U.S.C. § 9.  Section 10(a), in turn, dictates when a district court may vacate an arbitration award:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration:
>
>> (1) where the award was procured by corruption, fraud, or undue means;
>>
>> (2) where there was evident partiality or corruption in the arbitrators, or [any] of them;
>>
>> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>>
>> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).[6]

---

[6] As Vitarroz correctly notes, defendants do not argue that the Award should be modified or corrected, but vacated entirely.  Pl. Br. in Opp. to Defendants' Cross-Motion to Vacate ("Pl. Opp. Br.") at 6.  Therefore, § 11 of the FAA—dealing with corrections and modifications—is not relevant here.  *See* 9 U.S.C. § 11.

The parties agree, correctly, that this Court's role is highly deferential and that "an arbitration award is presumed to be valid unless it is affirmatively shown otherwise." *Homecomings Fin. Network v. Kotyk*, No. 07-1414, 2007 U.S. Dist. LEXIS 62533, at \*5 (D.N.J. Aug. 24, 2007) (citing *Brentwood Medical Ass'n v. United Mine Workers of Am.,* 396 F.3d 237, 241 (3rd Cir. 2005)); *see also Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 279-80 (3d Cir. 2004); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Millar*, 274 F. Supp. 2d 701, 706 (W.D. Pa. 2003).  The Court may not "overrule an arbitration decision because it finds an error of law," *United Indus. Workers v. Gov't of the Virgin Islands*, 987 F.2d 162, 170 (3d Cir. 1993) (citing *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599 (1960)), because "[i]n reviewing an arbitration award, courts 'do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.'"  *Major League Umpires Ass'n*, 357 F.3d at 280 (quoting *Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of Am.*, 896 F.2d 745, 747 (3d Cir. 1990) (in turn citing *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 37-38 (1987))).

The parties further agree that the Third Circuit has previously approved of the "manifest disregard of the law" standard for reviewing an arbitral award.  *See Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1520 (3d Cir. 1994) ("Manifest disregard applies when a court reviews the merits of an arbitrator's decision.").[7]  Under this standard, the Court "should not

---

[7] The Court notes that in *Kaplan*, the Third Circuit reversed a district court's confirmation of an arbitration award because it did not apply a *de novo* standard of review with respect to whether the arbitration panel had *jurisdiction* over an individual party under an alter ego theory.  *Kaplan*, 19 F.3d at 1520 ("[Manifest disregard] does not apply to judicial review of an arbitration panel's conclusion that one person is the alter ego of another for *jurisdictional* purposes.") (emphasis added).  The Third Circuit confirmed that the manifest disregard standard continues to apply to alter ego determinations *on the merits* once jurisdiction is determined to exist.  *Id.* at 1520 n.26, 1523 n.29.  Defendants did not raise any jurisdictional objections either before the arbitration

vacate [the] award unless it finds both that the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Millar*, 274 F. Supp. 2d at 706 (quoting *Halligan v. Piper Jaffray, Inc.,* 148 F.3d 197, 202 (2d Cir. 1998); *DiRussa v. Dean Witter Reynolds Inc.,* 121 F.3d 818, 821 (2d Cir. 1997), *cert. denied,* 522 U.S. 1049 (1998)).   The standard is necessarily a strict one, and "means that a reviewing court will decline to sustain an award "'only in the rarest case.'" *Newark Morning Ledger Co. v. Newark Typographical Union Local 103*, 797 F.2d 162, 165 (3d Cir. 1986) (quoting R. Gorman, Labor Law 586 (1976)).

Vitarroz and defendants part ways on whether the manifest disregard standard remains viable after the United States Supreme Court's decision in *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396 (2008), in which the Court held that the bases for statutory vacatur and modification may not be supplemented by contract; rather, it concluded that §§ 10 and 11 of the FAA provide the exclusive means for disturbing an arbitral award.  *Hall Street*, 128 S. Ct. at 1400, 1403-04.   Vitarroz argues that this holding abrogated the manifest disregard standard of review entirely.    Pl. Opp. Br. at 6-7.   Defendants respond that *Hall Street* merely held that parties cannot circumvent by contract the FAA's bases for vacatur, but that the manifest disregard standard is nonetheless a permissible proxy to enforce § 10.  Def. Rep. Br. at 2-4.

The Third Circuit has not yet confronted *Hall Street*'s impact on the manifest disregard standard.  *Hall Street* itself, however, discussed the standard's ambiguity as articulated in one of the Supreme Court's earlier cases.  In *Wilko v. Swan*, the Court stated that "the interpretations of the law by the arbitrators in contrast to manifest disregard [of the law] are not subject, in the federal courts, to judicial review for error in interpretation."   346 U.S. 427, 436-37 (1953).

---

panel or before this Court, and thus the Court need not perform a *de novo* review as to any jurisdictional issues insofar as an alter ego analysis is required.

When the petitioner in *Hall Street* took this statement to mean that *Wilko* permitted "expandable judicial review," the Supreme Court answered:

> [T]his is too much for *Wilko* to bear. Quite apart from its leap from a supposed judicial expansion by interpretation to a private expansion by contract, Hall Street overlooks the fact that the statement it relies on expressly rejects just what Hall Street asks for here, general review for an arbitrator's legal errors. *Then there is the vagueness of Wilko's phrasing. Maybe the term "manifest disregard" was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them. Or, as some courts have thought, "manifest disregard" may have been shorthand for § 10(a)(3) or § 10(a)(4), the subsections authorizing vacatur when the arbitrators were "guilty of misconduct" or "exceeded their powers."* We, when speaking as a Court, have merely taken the *Wilko* language as we found it, without embellishment, and now that its meaning is implicated, we see no reason to accord it the significance that Hall Street urges.

*Hall Street*, 128 S. Ct. at 1404 (emphasis added; internal citations omitted). Accordingly, *Hall Street* did not, as Vitarroz argues, "completely abrogate" the manifest disregard standard, Pl. Opp. Br. at 7; the case only highlighted its impermissible applications. This Court agrees that in light of *Hall Street*, use of the manifest disregard standard is no longer authorized to the extent it was previously viewed as an additional basis for vacatur. However, insofar as manifest disregard is merely "shorthand for § 10(a)(3) or § 10(a)(4)," the standard lives on. *Hall Street*, 128 S. Ct. at 1404. Rather than viewing it as an extra-statutory vehicle for vacatur, this Court—in the absence of a Third Circuit directive otherwise—will continue to apply the manifest disregard standard as a means to enforce § 10, consistent with *Hall Street*. *See Stolt-Nielson SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 93-95 (2d Cir. 2008) (refusing to abandon manifest disregard standard after *Hall Street*); *MasTec N. Am., Inc. v. MSE Power Sys.*, 581 F. Supp. 2d 321, 324-25 (N.D.N.Y. 2008) (same); *but see Andorra Servs. v. M/T Eos*, No. 06-373, 2008 WL 4960449, at *2 (D.N.J. Nov. 20, 2008) (Sheridan, J.) (declining to apply a standard of review

10

approved by the Third Circuit prior to *Hall Street*, but affirming that its review is limited to §§ 10 and 11 of the FAA).

## III.     DISCUSSION

Defendants do not challenge the panel's factual finding that the press release itself violated the Agreement's confidentiality provisions.  Moreover, only §§ 10(a)(3) and 10(a)(4) are relevant here; defendants do not argue that Vitarroz procured the Award through fraud, corruption, or the like, nor do they assert that the arbitrators themselves exhibited signs of corruption or partiality.  As stated earlier, defendants raise two grounds upon which they argue vacatur is appropriate.  First, they argue that the arbitration panel manifestly disregarded applicable law when it held the following:  (1) that WHI breached the Agreement due to the press release issued by Williger and GWFIL, despite acknowledging that they were non-parties to the Agreement; and (2) that joint and several liability should extend to Williger and GWFIL by virtue of WHI's breach.  Def. Br. at 8-10.  Second, they argue that the panel was guilty of misconduct when it limited the cross-examination of Vitarroz's principal, Steve Weinreb, due to the personal commitments of one of the arbitrators. *Id.* at 10-12. The Court will address each argument in turn.

### A.  WHI's Breach and Resulting Imposition of Joint and Several Liability

Defendants' first argument—that WHI could not be in breach of the agreement by virtue of Williger's or GWFIL's acts—lacks merit.  Defendants acknowledge that it is a "truism" of corporate law that the "acts of a corporate agent can constitute a breach of a principal's agreement." Def. Rep. Br. at 6; *see also Menichini v. Grant*, 995 F.2d 1224, 1233 n.14 (3d Cir. 1993).  But they argue that Williger's statements were made while representing GWFIL (not WHI), and that GWFIL could not have been acting on behalf of WHI because it controlled WHI

11

(i.e., GWFIL was not WHI's agent).  Def. Rep. Br. at 6.   The Court finds that the panel did not

manifestly disregard the law by ascribing Williger and GWFIL's actions to WHI.   Were it

otherwise, Williger (Chairman and Chief Operating Officer of GWFIL, and an officer of WHI)

would have been free to:  (1) take Vitarroz's confidential information obtained in due diligence;

(2) disseminate it without regard to the confidentiality provisions in the Agreement; and (3)

bypass liability for the WHI entity—which GWFIL established specifically for the merger

transaction—by purporting to act on GWFIL's (but not WHI's) behalf.   Under defendants'

interpretation of the Agreement, the confidentiality provisions would ring hollow.

> Additionally, § 7.08(b) of the Agreement reads in part:
>
>> WHI . . . may disclose Confidential Information to any of its
>> directors, officers, employees, agents, financing sources, and
>> advisors (each a "Representative" and, collectively,
>> "Representatives") . . . ; provided, however that prior to making
>> such disclosure, [WHI] shall require each such Representative to
>> be bound by the provisions of this Section 7.08 to the same extent
>> as if they were parties to this Agreement and [WHI] *shall be
>> responsible for any breach of this Agreement by any such
>> Representative*.

Kurshan Decl., Exh. B at. 24 (emphasis added).   Defendants argue that § 7.08(b) does not

"impose any obligation whatsoever on [GWFIL] or Williger [because] they were not parties to

the contract," but they miss the point of the provision.  Def. Br. at 10.  Section 7.08(b) holds

*WHI* responsible for its representatives' breach of the provision (here, GWFIL and Williger).

This provision plainly demonstrates that while "Representatives" of WHI who procure

confidential information may not be a party to the Agreement, those representatives' breach of

the confidentiality provisions would hold WHI responsible to the same extent as if it had

breached the provisions itself.  The panel need not have averted to everyday agency principles to

find that Williger and GWFIL were "Representatives" under the Agreement, and that WHI was

responsible for their failure to keep Vitarroz's confidential information confidential.  Thus, the fact that GWFIL is the corporate parent of WHI is of no moment, for GWFIL and Williger could be found to be WHI's "Representatives" under the Agreement.[8]  The panel, therefore, did not manifestly disregard applicable law by finding that WHI breached the Agreement despite the fact that the breaching conduct came from non-signatories to the Agreement.

Neither can the Court say that holding GWFIL and Williger jointly and severally liable was a manifest disregard of the law.  As the Court has noted, the panel concluded that

> [GWFIL] and Williger formed WHI for the purpose of engaging in the transaction with Vitarroz; that [GWFIL] and Williger controlled the activities of WHI; and that the acts that triggered WHI's breach of the duty to cooperate and its violation of the covenant of good faith and fair dealing were undertaken by [GWFIL] and Williger.

Award at 9-10.  Vitarroz argues that this conclusion is sufficiently synonymous with "piercing the corporate veil" to justify confirmation of the Award.  Defendants argue that the panel "did not undertake any veil-piercing analysis, and reliance on this doctrine to sustain the Award would necessitate manifest disregard of established corporate law, as opposed to contract law." Def. Br. at 10.  But "[a]rbitrators have no obligation to the court to give their reasons for an award"; indeed, a written opinion is not required.  *Enterprise Wheel & Car Corp.*, 363 U.S. at 598; *V.I. Nursing Ass'n Bargaining Unit v. Schneider*, 668 F.2d 221, 224 (3d Cir. 1981).  Again, the Court does not sit as a super-arbitrator to hear "claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.'" *Major League Umpires Ass'n*, 357 F.3d at 280.  So long as a coherent basis in law and fact underlies the Award—and the Court finds such to be the case here—vacatur is improper.

---

[8] The panel did not expressly make this point in its analysis, but this independent basis is further reason not to disturb the Award.

13

Defendants do not dispute that parent corporations and corporate officers can be held liable for damages for the subsidiary's breach of an agreement. *See* Def. Rep. Br. at 6-8 (discussing cases cited by Vitarroz); *see also Expediters Int'l v. Direct Line Cargo Mgmt. Servs.*, 995 F. Supp. 468, 481-82 (D.N.J. 1998) (Pisano, J.) (in a case involving a contractual breach of trade secret confidentiality, recognizing that a finding of total parental domination is unnecessary for parent liability, but that an arrangement must exist between the corporations "so that one acts on behalf of the other and within the usual agency principles, [and] the arrangement must be relevant to the plaintiff's claim of wrongdoing.") (internal quotations and citations omitted). They attempt to distinguish the present case from the cases upon which Vitarroz relies because in each instance, the subsidiary actually breached the contract. Def. Rep. Br. at 6-8. This is a distinction far too fine, however, to be disturbed on review for manifest disregard of the law. The panel first imputed WHI's breach through Williger's and GWFIL's conduct, and this Court has found that result acceptable under the FAA. The panel then implicitly pierced the corporate veil—upon a factual finding of parental control—to hold the actual wrongdoers liable as well. The Court now concludes that by rendering this remedial decision, the panel did not overstep its authority and did not so "imperfectly execute" its powers that relief is necessary or appropriate under § 10.  9 U.S.C. § 10(a).

Furthermore, defendants' emphasis that the panel did not explicitly find them liable on Vitarroz's tort claims—and that consequently, the damages assessed against them were improper remedies in contract—is unpersuasive. Def. Br. at 2; Def. Rep. Br. at 8. The panel's conclusion that the dissemination of confidential information was in bad faith permits the inference that the panel might have considered the conduct tortious, thus justifying joint and several liability against Williger and GWFIL. That it did not expressly so find does not warrant disturbing the

14

Award.  *See Enterprise Wheel & Car Corp.*, 363 U.S. at 598 ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award."); *see also Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 308 (2002) ("Under the participation theory, the court imposes liability on the individual [corporate officer] as an actor . . . [and not] as an owner when the evidence presented indicates he participated in the tortious conduct.") (internal quotations and citations omitted).  Given the panel's findings that Williger and GWFIL engaged in the culpable conduct precipitating GWI's breach, it had "wide latitude in exercising [its] authority, especially in fashioning an appropriate remedy"—here, imposition of joint and several liability on the actual wrongdoers.  *College Hall Fashions, Inc. v. Philadelphia Joint Bd., Amalgamated Clothing Workers of Am.*, 408 F. Supp. 722, 728 (E.D. Pa. 1976) (citing *Mogge v. District* 8, *Int'l Ass'n of Machinists, AFL-CIO*, 454 F.2d 510 (7th Cir. 1971)); *see also Sherrock Bros. v. DaimlerChrysler Motors Co., LLC*, 260 F. App'x 497, 502 (3d Cir. 2008).

The Court "cannot review arbitration awards for legal error . . . and [is] concerned only with whether it is evident from the record that the arbitrators ignored the applicable law." *Sherrock Bros.*, 260 F. App'x at 500-01 (citing *Exxon Shipping Co. v. Exxon Seaman's Union*, 73 F.3d 1287, 1295 (3d Cir. 1996)).  Defendants have failed to establish that the panel "knew of a governing legal principle yet refused to apply it or ignored it altogether, and the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Millar*, 274 F. Supp. 2d at 706.  The Court therefore holds that the panel was justified in finding that Williger's and GWFIL's actions caused WHI to breach the Agreement; further, imposition of joint and several liability on those actors was not a manifest disregard of the law.

15

### B. Limitation of Cross-Examination of Steve Weinreb

Defendants argue that a complete cross-examination of Steve Weinreb would have allowed them to prove, *inter alia*, that the breach of the confidentiality provisions caused no harm to Vitarroz because the "credit terms [with its vendors] remained the same before and after the press release was disseminated." Def. Rep. Br. at 11; Kurshan Decl. ¶¶ 8-11. They assert that "the [p]anel was obligated to give both sides an opportunity to elicit testimony *in full*[,] even if it involved returning on the next day available to conclude the hearing. Def. Rep. Br. at 15 (emphasis added). The Court does not agree. Misconduct means "not bad faith, but misbehavior though without taint of corruption or fraud, if born of indiscretion." *Sherrock Bros.*, 260 F. App'x at 501 (quoting *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir. 1968)). Although the panel was "not required to hear all the evidence proffered by a party, [it must have] give[n] each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997) (quoting *Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985) (internal quotations omitted)). Section 10(a)(3) cannot be read, however, "to intend that every failure to receive relevant evidence constitutes misconduct which will require the vacation of an arbitrator's award." *Sherrock Bros.*, 260 F. App'x at 501 (quoting *Newark Stereotypers*, 397 F.2d at 599). Instead, "misconduct under § 10(a)(3) will not be found 'unless the aggrieved party was denied a fundamentally fair hearing.'" *Id.* (quoting *Intercarbon Bermuda, Ltd. v. Caltex Trading and Transport Corp.*, 146 F.R.D. 64, 72 (S.D.N.Y. 1993)); *see also Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 995 (3d Cir. 1997) (procedural error must result in "fundamental unfairness" to warrant vacatur of arbitration award).

16

As the Court has noted, the arbitration panel permitted the parties to: (1) conduct extensive discovery in preparation for the evidentiary hearing; (2) adduce volumes of documentary evidence at the hearing; (3) present the testimony of 15 witnesses (which consisted both of direct and cross-examination, albeit one witness's testimony was shortened); (4) submit post-hearing memoranda; (5) make summation arguments; and (6) answer the panel's post-hearing questions.   The panel *limited* Weinreb's testimony, it did not exclude it outright. *See Transtech Indus. v. A&Z Septic Clean*, 270 F. App'x 200, 209 (3d Cir. 2008) (refusing to vacate arbitration award where the arbitration "proceedings lacked certain pertinent evidence, a live hearing, and cross-examination of witnesses" where the "multiple submissions, voluminous supporting materials, and frequent opportunities for oral argument" suggested that no defect in due process existed).

The Court finds this case distinguishable from the cases cited by defendants: *Tempo Shain*, *supra*; *Coastal General Construction Services v. Virgin Islands Housing Authority*, 238 F. Supp. 2d 707 (D.V.I. 2002); and *Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union No. 506* v. *E.D. Clapp Corp.*, 551 F. Supp. 570 (N.D.N.Y. 1982).

In *Tempo Shain*, the arbitrators refused to admit the testimony—on the basis that it would have been cumulative—of a witness who was the only person who could have rebutted allegations of misrepresentation. The district court confirmed the arbitration award, but the Second Circuit reversed, finding that the arbitrators had acted unreasonably. *Tempo Shain*, 120 F.3d at 20. Defendants argue that *Tempo Shain* is instructive here because cross-examination of Steve Weinreb was "critical to the damages defense," in part because the "[p]anel placed a premium on testimony" over Vitarroz's post-breach financial records submitted by defendants.

17

Def. Rep. Br. at 11, 14-15.[9]    Initially, defendants' own argument that "volumes of corporate records . . . supported [their] claims," Def. Br. at 6, tends to undercut their argument that cross-examination of Weinreb was imperative for a fundamentally fair arbitration proceeding.  More important, the panel's decision that the documentary evidence presented by defendants was unpersuasive, rested not on Steve Weinreb's testimony, but largely on the testimony of third-party supplier witnesses (who *were* subject to cross-examination) that there were indeed post-breach "adverse changes in credit or shipping terms, . . . material decreases in inventory levels, and . . . significant pay downs of accounts receivables."   Award at 11.   Because of this independent basis for rejecting the corporate records, the Court cannot find misconduct in refusing to allow defendants to press Weinreb on the post-breach records.

The panel further reasoned that defendants did not "deny that Vitarroz suffered a diminution in sales revenues and corresponding profits during the five and one-half month damage period, they d[id] not challenge the methodology of [Vitarroz's damages expert's] analysis, and they d[id] not offer a contrary damage[s] analysis." *Id.*  Defendants argue that their failure to challenge Vitarroz's diminution in sales and profits during the damage period stemmed from "the absence of cross-examination [of Weinreb]," Def. Rep. Br. at 14, but do not explain how this is so.   Significantly, the panel stated expressly that it considered the testimony of "*several witnesses*, . . . *under cross-examination* by [defendants], that suppliers and customers were troubled more by the perception that they gleaned from the release—financial irregularities or inadequacies at Vitarroz—than by the mere fact that the transaction was not consummated." Award at 11 (emphasis added).   While this statement does not specify which defendants'

---

[9] Defendants also state that "the panel made a point in its Award that it did not accept [their] claims and contentions . . . because of the missing testimony and their not judging the credibility of Weinreb." Def. Rep. Br. at 11.  Defendants provide no record citation on this point, however, and the Court can find no such statement in the Award.

testimony the panel found persuasive, it nonetheless demonstrates two reasons why the panel did

not commit misconduct.  First, the panel acknowledged that it duly considered defense counsel's

cross-examination of each witness (including those whose testimony it did not limit).  Second—

and more important—even assuming that Weinreb was one of the witnesses to whom the panel

referred as persuasive regarding damages (which is not at all clear), its statement shows that a

finding and accompanying calculation of damages was not dependent on Weinreb's testimony,

because "several" witnesses adduced evidently consistent testimony, under cross-examination.

      *Coastal General* is also not persuasive.  There, the district court affirmed the territorial

court's decision to vacate an arbitration award because the arbitrator refused to continue an

evidentiary hearing when one party amended its damages claim by more than $1 million dollars

less than 24 hours before the hearing was scheduled to begin.  238 F. Supp. 2d at 707-11.  The

court held that the trial court did not err in finding misconduct for refusing to allow the other

party to investigate the amended damages claim.  *Id.*  This case is not comparable to *Coastal*

*General* in the slightest.  Both parties in this action were given ample time to investigate the

various claims through extensive discovery, and each party was well prepared to present their

respective arguments.  Limitation of one witness's cross-examination testimony does not equate

to an outright refusal to permit a party to investigate eleventh-hour claims.

      In *E.D. Clapp*, the district court vacated an arbitration award in a labor dispute after a

hearing was cut short because the arbitrator walked out before the union could put forth its case

in full.  551 F. Supp. at 574, 577.  But there was a factual dispute as to whether a prior "hearing"

had been held on the merits, and because the arbitrator walked out of the second hearing, the

district court determined that the union had not been "given a full opportunity to present its case

to the arbitrator for consideration."  *Id* at 578.  The court did not find, however, that limitation of

a single witness's testimony inevitably arises to an absence of the opportunity to present a full case to the arbitration panel.   Defendants have not shown that Weinreb's limited cross-examination precluded them from making a full presentation of proof on the merits.

Finally, defendants repeatedly assert that their submission of a post-hearing brief—replete with arguments concerning damages—was no substitute for cross-examination, sidestepping the law that in an arbitration proceeding, "a party does not have an absolute right to cross examination." *Sunshine Mining Co. v. United Steelworkers of Am., AFL-CIO*, 823 F.2d 1289, 1295 (9th Cir. 1987) (citing *Hoteles*, 763 F.2d at 40).  The FAA requires, and the Court finds that this panel did, "give each of the parties to the dispute an adequate opportunity to present its evidence and arguments."   *Id.*   The arbitrators permitted defendants to take the deposition of Weinreb, to conduct a limited cross-examination of him, to fully cross-examine the other witnesses, to present a complete affirmative case, and to present closing arguments, both orally and in a brief.   Under the circumstances, the Court concludes that the panel did not deprive defendants of a fundamentally fair hearing.   Vacatur is therefore inappropriate.

## IV.    CONCLUSION

For the reasons discussed above, the Court grants plaintiff's motion to confirm the arbitration award, and denies defendants' motion to vacate the same.   An appropriate judgment and order accompanies this opinion.

/s/  Katharine S. Hayden

Hon. Katharine S. Hayden
United States District Judge

20